IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

Sharlia Cotton, Individually and on Behalf of All Others Similarly Situated,

*Plaintiff*,

v.

Dollar General Corporation,

*Defendant*.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Sharlia Cotton ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint against Defendant Dollar General Corporation ("Defendant" or "Dollar General") and in support states the following.

### NATURE OF THE SUIT

1. Defendant is a multinational variety store that specializes in lower cost items.

2. Dollar General is often cited for targeting lower income neighborhoods and other rural areas.[1]

3. This lawsuit arises out of Defendant's advertising and pricing practices.

---

[1] https://businessmodelanalyst.com/dollar-general-business-model/#:~:text=and%20cost%2Deffective.-,Stores%20are%20located%20in%20rural%20areas.,miles%20away%20from%20grocery%20stores (last accessed October 30, 2023).

4. In short, Defendant labels its products as a certain price through its price tags in its stores but when customers attempt to pay the advertised price for the product at the register, they are informed that the price of the product is higher than advertised.

5. Plaintiff brings this action because of Defendant's fraud, false marketing, false advertising, and breaches of state law consumer protection statutes.

## JURISDICTION AND VENUE

6. This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 class members.

7. This Court has personal jurisdiction over Defendant because they have their principal place of business located in this judicial district or are registered to do business within this district, with their principal place of business at 100 Mission Ridge, Goodlettsville, TN 37072. Defendant's registered agent for service of process is Corporation Service Company located at 2908 Poston Avenue, Nashville, TN 37203. Diversity exists in that the Plaintiff is a resident citizen of South Carolina and the Defendant is headquartered in Tennessee.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.

9. Given that Defendant's headquarters are located within this district, the design, approval, and distribution process of the price tags occurred or originated within this District. Additionally, Defendant has advertised in this district and has received substantial revenue and

profits from its sales of products in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

### A. Plaintiff

10. Plaintiff is a resident of Myrtle Beach, South Carolina. Myrtle Beach is located within Horry County, South Carolina.

11. For the past several months, Plaintiff has shopped at two of Defendant's locations, both of which are on North Kings Highway, in Myrtle Beach.

12. While shopping at these two different locations, Plaintiff was informed by store cashiers that the listed prices are incorrect and that the items cost more than listed.

13. Plaintiff was informed by the cashier that the price tags were either false or were not updated. Regardless of the reasoning for the false advertising and at risk of embarrassment and a further waste of time, Plaintiff has had to pay more than the listed price on multiple items at Defendant's stores.

### B. Defendant

14. Defendant is a multinational corporation, specializing in retail, with its headquarters located at: 100 Mission Ridge Goodlettsville, Tennessee 37072.

15. Defendant specializes in retail, having locations in many rural and lower income areas.[2]

16. As of 2023, Dollar General has over 19,000 stores.[3]

---

[2] https://www.trekig.com/in-the-press/how-dollar-general-became-rural-americas-store-of-choice/ (last accessed October 30, 2023).
[3] https://newscenter.dollargeneral.com/company-facts/fast-facts/ (last accessed October 30, 2023).

17. In 2022, Dollar General had almost 40 billion dollars in revenue, with a total of $37.8 billion dollars in revenue.[4]

*Defendant's Business Practices and Impact on Society*

18. Dollar General is a predatory corporation, displacing many jobs as well as targeting minorities and/or lower socio-economic communities.[5]

19. As illustrated by the following quote: "There are many examples of grocery stores that closed when a dollar store opened nearby. The only grocery store in Whitmire, S.C. struggled for two years after a Dollar General store opened there. It finally closed in February 2022, leaving residents with the option of buying their food from the Dollar General or making a 45-minute round trip to the nearest town with a full-service grocery store"[6]

20. Dollar General is a corporation that is also predatory against regular, normal grocery stores with fresh fruit, vegetables, and a full selection of food. When Dollar General comes to a small town, as is part of Dollar General's modus operandi, the local grocery stores close.[7]

21. Unfortunately for consumers, especially those in rural areas, Dollar General, and stores like it, exacerbate what are known as food deserts.[8]

22. Food deserts are best described as: "Food deserts are geographic areas where residents have few to no convenient options for securing affordable and healthy foods — especially fresh fruits and vegetables. Disproportionately found in high-poverty areas, food deserts create

---

[4] https://www.zippia.com/dollar-general-careers-3515/revenue/ (last accessed October 30, 2023).
[5] https://ilsr.org/17-problems/#:~:text=They%20single%20out%20towns%20and,believing%20they%20are%20getting%20bargains (last accessed October 30, 2023).
[6] Id.
[7] Id.
[8] Id.

extra, everyday hurdles that can make it harder for kids, families and communities to grow healthy and strong."[9]

23. Compounding the damage of Dollar General even further is the corporation's inhumane business practices against its own workers, which is notably horrendous: "In May 2021, all the workers at a Dollar General store in Eliot, Maine walked out. The store's manager had resigned the day before after working a month of 70-hour weeks.".[10]

24. Chain dollar stores, such as Defendant, are often monopoly-like entities, squashing competition by their sheer size: "Because of their massive market power and cash reserves, chain dollar stores can buy inventory in enormous quantities at discounts rarely available to small businesses."[11]

25. Stores like Defendant are also vampire-like drains on the small communities' funds. In short, corporations like Defendant take the funds from a community and use it to pay their own expenses, often keeping things local. As explained below:

> "Locally owned businesses spend a large percentage of their profits locally.... They also support their owners' households, their staffs' households, and the many local businesses from which those households pay for housing, transportation, food, clothing, personal and professional services, entertainment, education, and many other things. By contrast, only a modest percentage of a dollar chain's profits remain in the community. They flow back to the corporation, and the corporation then spends the profits on expansion, shareholder dividends, stock buybacks (to beef up their share price), and directors' compensation. Even their rent payments usually go to out-of-area developers who specialize in developing and

---

[9] https://www.aecf.org/blog/exploring-americas-food-deserts (last accessed October 30, 2023).
[10] Id.
[11] https://ilsr.org/17-problems/#_edn14 (last accessed October 30, 2023).

leasing buildings to dollar store chains. The only portions of their profits that typically remain local and benefit the community are utility payments, property tax, and salaries — all of which are also paid by locally owned businesses. The community ultimately loses local wealth and gains nothing in return. Numerous studies have shown that roughly 45-60 percent of a dollar spent in a locally owned business remains and recirculates in the community, versus only 14-30 percent spent in chain stores."[12]

26. In addition to sucking the lifeblood of a small community away, the smalltown economy, and shipping it back to corporate shareholders, Dollar General often strips the government of its own resources: taxes. In addition to lessening tax dollars, Dollar General, and stores like it, often state they need subsidies, and for some reason are often granted these subsidies from local governments.

27. The statement in the above paragraph is best illustrated by the following quote:

"Take Haven, Kan., for example, which ultimately lost more than $50,000 in annual revenue after a Dollar General opened and pushed out the town's only grocery store. Initially, the year after Dollar General opened there, sales tax revenue grew by $60,000. But then the town's only grocery store lost an average of $1,000 per day, the equivalent of 35-40 percent of its total sales. The store closed permanently three years later — and with it, the town lost the $75,000 in property taxes the grocery store had been paying annually. That would have resulted in a net loss of $15,000 per year in property tax revenue for Haven. But, adding insult to injury, Dollar General had asked the town council to discount its utility bills by $72,000. The council agreed to half of that — so, when the grocery store

---

[12] https://ilsr.org/17-problems/#_edn14; https://ilsr.org/key-studies-why-local-matters/ (last accessed October 30, 2023).

closed, the town lost, in total, over $50,000 in annual revenue. In addition to their potential impact on commercial property tax revenue, dollar stores can have a negative impact on residential property values which, in turn, affects tax revenue. A 2022 study by Clemson University, for example, found that the presence of a nearby dollar store diminished property values by 16-21 percent between 2016-2019, while the presence of a nearby grocery store increased property values by 14-15 percent. Chain dollar stores also increase municipal expenses, such as the costs of increased police, fire, sewer, and other municipal services to these traffic-intensive, crime-vulnerable stores. Incredibly, many communities have given subsidies — in the form of tax abatement, tax rebates, outright cash, and other incentives — to dollar store chains to locate there. For example, in June 2022, Peosta, Iowa's city council gave a Dollar General developer a 15-year, 85 percent property tax rebate, capped at $275,000. Between 2000-2021, Dollar Tree received 252 subsidies, totaling $109.3 million. In that same period, Dollar General received $36.5 million in subsidies."[13][14][15]

28. Chain stores like Dollar General are often dangerous to the communities, given they are under secured and understaffed.[16]

---

[13] https://www.theguardian.com/business/2018/aug/13/dollar-general-walmart-buhler-haven-kansas (last accessed October 30, 2023).
[14] https://ilsr.org/17-problems/ ; Dean Dabney, Ph.D., Leah E. Daigle, Ph.D., and Michelle Eichinger, M.S., "Evaluation of Small Box Discount Retailers and Negative Outcomes in Unincorporated DeKalb County," DeKalb County, 2022 (last access October 30, 2023).
[15] https://ilsr.org/17-problems/ ; Elizabeth Kelsey, "Peosta City Council Agrees to Incentives for Proposed Dollar General," *Telegraph Herald*, June 16, 2022 (last accessed October 30, 2023).
[16] https://ilsr.org/17-problems/#_edn16 (last accessed October 30, 2023).

29. In some towns, Dollar General stores are particular crime hubs: "In Dayton, Ohio, where more than one-quarter of all commercial robberies in 2019 took place at Dollar General stores, a police detective called dollar stores "robbery magnets.""[17]

30. Dollar General is often a danger outside of crime, given that Dollar General stores exacerbate traffic issues:

"In February 2022, for example, Salisbury, N.C. residents persuaded the City Council to reverse its decision to permit the development of a new Dollar General store on a rural road that had already experienced three traffic fatalities in the past two years."[18]

31. This traffic exacerbation is because of Dollar General's selection of cheap land with unsuitable roads, relative to the needs of Dollar General:

"Chain dollar stores look for inexpensive locations. Dollar General founder Cal Turner, Sr. famously refused to pay more than $1.00 per square foot in rent, saying that, at the low prices the company offered, customers would find its stores wherever they were. Because of this corporate ethos, Dollar General stores tend to locate (apart from urban areas) on the edges of communities, where their developers can buy cheap land. They often choose sites zoned for agricultural use or bordering on low-density residential neighborhoods, whose roads are rarely designed to accommodate the traffic volume a chain dollar store generates or to support the weight of dollar store delivery trucks."[19]

32. Most important to the matter at hand: Dollar General is a noted violator of consumer protection laws, specifically those related to overcharging: "All three major small-box discount

---

[17] https://ilsr.org/17-problems/#_edn16 (last accessed October 30, 2023).
[18] https://www.qcnews.com/news/u-s/north-carolina/rowan-county/salisbury/not-in-my-backyard-salisbury-residents-protest-dollar-general-store/ (last accessed October 30, 2023).
[19] https://ilsr.org/17-problems/#_edn24 (last accessed October 30, 2023).

chains have been fined for scanner errors, selling products for prices higher than advertised on the shelf. In 2019, for example, Dollar General paid $1.65 million in penalties to the State of Vermont for 362 overcharge errors, despite being told by inspectors at least 50 times to fix the problem."[20]

33. Dollar General, through its actions and omissions, negatively impacts society in terms of health, nutrition, and economics.

## FACTUAL ALLEGATIONS

34. Plaintiff has purchased items from Defendant for the past several months at two locations. As stated earlier, both of these locations are located on North Kings Highway in Myrtle Beach, South Carolina.

35. At each location, Plaintiff has been forced to pay more for items relative to the item's price on the shelf.

36. In every instance of over-charging, or misrepresentation, Plaintiff has notified the cashier. Only once has Plaintiff's purchase price been reduced to the advertised price.

## CLASS ALLEGATIONS

37. Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to Rule 23(a) and Rule 23 (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks class certification on behalf of the class defined as follows ("the Nationwide Class").

**Nationwide Class:** All persons in the United States who were overcharged on items/goods sold by Defendant from 2020 to the Present.

38. Excluded from the Class are any Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

---

[20] https://www.wcax.com/content/news/Vermont-slaps-Dollar-General-17M-for-pricing-errors-510927831.html (last accessed October 30, 2023).

39. The Nationwide Class shall be referred to as the "Class". Proposed Members of said Class will be referred to as "Class Members", or otherwise referenced as "members of the Class".

40. **Numerosity:** The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff at this time.

41. **Typicality:** Plaintiff's claims are typical to those of all Class Members because members of the Class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

42. **Commonality:** Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class Members. The claims of Plaintiff and all prospective Class Members involve the same alleged misconduct. These common legal and factual questions include the following:

   a. Whether Defendant overcharged Plaintiff and Class Members;

   b. Whether Defendant owed a duty of care to Plaintiff and the Class;

   c. Whether Defendant knew or should have known that the price tags were misleading and/or fraudulent;

   d. Whether Defendant wrongfully represent, and continue to represent, that their items are a certain price but charge a higher price;

   e. Whether Defendant's omissions are true, or are misleading, or objectively reasonably likely to deceive;

   f. Whether the alleged conduct constitutes violations of the laws asserted;

g. Whether Defendant's allege conduct violates public policy;

h. Whether Defendant's representations in advertising, warranties, packaging, and labeling are false, deceptive, and misleading;

i. Whether those representations are likely to deceive a reasonable consumer;

j. Whether Defendant was unjustly enriched as a result of its marketing, advertising, and sale of its overcharged items;

k. Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

l. Whether Plaintiff and the Class Members are entitled to damages and/or restitution and the proper measure of that loss; and

m. Whether an injunction is necessary to prevent Defendant from continuing to market and sell fraudulently priced items.

43. **Adequacy:** Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and has the resources and abilities to fully litigate and protect the interests of the Class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

44. **Superiority:** A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by Plaintiff and the individual Class Members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class Members, on an individual basis, to obtain meaningful

and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

45. The Class may also be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

46. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above, such as continuing to market and sell mispriced items that may be more expensive. Further, Plaintiff seeks for Defendant to provide a full refund of the purchase price of mispriced items to Plaintiff and the Class Members.

47. Unless a Class is certified, Defendant will retain monies received as a result of their conduct that was taken from Plaintiff and the Class Members. Unless a Class-wide injunction is issued, Defendant may continue to commit the violations alleged and the members of the Class and the general public will continue to be misled and placed in harms' way.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

48. Plaintiff incorporates Paragraphs 1-47 by reference as if fully set forth herein.

49. Defendant has a duty to provide accurate price tags to consumers.

50. Defendant breached this duty by designing, producing, marketing, and selling items that were overpriced relative to their price tag.

51. Defendant's breach of this duty to provide accurately priced items caused damages to Plaintiff.

52. Plaintiff was damaged in that she lost her benefit of the bargain, has suffered economic loss through the retention of her funds paid for overpriced items, has suffered inconveniences due to the constant denial of relief from overcharging.

53. Defendant's actions caused these damages both factually and proximately.

54. But for Defendant's design, production, marketing, and sale of overpriced items, Plaintiff and the Class would not have been damaged.

55. Due to Defendant's conduct, Plaintiff was damaged by Defendant in that Plaintiff has been deprived of her benefit of the bargain and loss of purchase price.

56. Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's negligent failure to deliver the bargained for items at the listed price.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
**(On Behalf of Plaintiff and the Class)**

57. Plaintiff incorporates Paragraphs 1-56 by reference as if fully set forth herein.

58. Plaintiff and Class Members plead in the alternative for their Negligent Misrepresentation claims.

59. Through their advertising and the course of their regular business, Defendant made representations to Plaintiff and the Class concerning the function, operability, and validity of its own prices of its own sold goods.

60. Defendant did not practice reasonable care in the above-mentioned design, creation, production, sale, and marketing of its goods.

61. Defendant made these statements as to guide consumers, such as Plaintiff and the Class, in the transactional process.

62. Defendant knew that such statements would be relied upon, the fact that Defendant's items were accurately labeled relative to price, by Plaintiff and the Class, given that the statements were the entire reasoning for the purchase of the goods.

63. Plaintiff and the Class would not have purchased the goods without such statements and assertions put forth by Defendant.

64. Defendant intended that Plaintiff and the Class rely on the representations made by Defendant regarding the goods' prices.

65. Plaintiff reasonably relied upon such representations and omissions to her detriment as she suffered damages.

66. By reason thereof, Plaintiff and Class Members have suffered damages in an amount to be proven at trial.

67. Due to Defendant's conduct, Plaintiff was damaged by Defendant in that Plaintiff has been deprived of her benefit of the bargain and loss of purchase price.

68. Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's negligent misrepresentation of the price of items.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

69. Plaintiff incorporates Paragraphs 1-67 by reference as if fully set forth herein.

70. Plaintiff and the Class bestowed benefits upon Defendant in the form of monies that were paid in exchange for Defendant's goods.

71. These benefits bestowed by Plaintiff were not a donation to Defendant, as these monies were given for the purchase of the goods.

72. As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Class when they purchased the goods, that were overpriced relative their actual price tag.

73. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

74. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

75. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

76. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive manufacturing, labeling, and marketing of the goods to Plaintiff and members of the Class.

77. Defendant's retention of such funds under circumstances making it inequitable to do so, constitutes unjust enrichment.

78. The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class.

79. Given the above, the circumstances make Defendant's retention of funds inequitable, without reimbursement for the funds to Plaintiff and the Class.

80. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them, plus interest thereon.

81. Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## FOURTH CAUSE OF ACTION
### Breach of Contract
**(On Behalf of Plaintiff and the Class)**

82. Plaintiff incorporates Paragraphs 1-80 as if fully set forth herein.

83. Through their marketing, advertisements, and promises, Defendant created a contract with Plaintiff.

84. In specific, Plaintiff was to pay a certain price in exchange for Defendant's goods.

85. Plaintiff performed her obligation under the contract.

86. Defendant failed to perform their obligation under the contract in that Defendant failed to provide goods that adhered to the goods price tag and/or advertising.

87. Plaintiff and the Class have been damaged as a direct and proximate result of Defendant's breach.

88. Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## FIFTH CAUSE OF ACTION
### Fraud
**(On Behalf of Plaintiff and the Class)**

89. Plaintiff incorporates Paragraphs 1-87 as if fully set forth herein.

90. Defendant made a fraudulent misrepresentation of material fact in that Defendant marketed, sold, and promised Plaintiff a good that would be sold at a certain, advertised and listed, price.

91. The advertised, listed, and certain price is and was a material fact to Plaintiff's decision to purchase the goods.

92. Had Plaintiff known of the truly fraudulent nature of the pricing of the goods, Plaintiff would have not shopped at Defendant's stores.

93. Plaintiff relied on Defendant's misrepresentation in her purchase of the goods.

94. Plaintiff was justified in relying on this misrepresentation as the true nature of the goods was not known to Plaintiff and Defendant promised a good that would be sold at a certain price.

95. Plaintiff has suffered damages as a direct and proximate result of this justification as Plaintiff has lost out on her benefit of the bargain, lost funds stemming from her purchase price, has suffered emotional duress, and has been greatly inconvenienced by Defendant's mispriced goods.

96. Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

**SIXTH CAUSE OF ACTION**
**Fraudulent Misrepresentation**
**(On Behalf of Plaintiff and the Class)**

97. Plaintiff incorporates Paragraphs 1-95 by reference as if fully set forth herein.

98. Defendant made a fraudulent misrepresentation of material fact in that Defendant stated that the goods would be sold at their listed price.

99. These goods were not sold at their listed price and this assertion of a certain advertised or listed price was the entire basis for Plaintiff's purchase.

100. Plaintiff relied on the above misrepresentation as the listed price was the entire reason for her purchase of the goods.

101. Plaintiff was justified in relying upon the above misrepresentation because, for stores, other than Defendant, the listed price is the purchase price.

102. Plaintiff's reliance resulted in damages as Plaintiff would not have purchased, thus losing the money related to such purchase, the mispriced items.

103. As a direct and proximate cause of Defendant's conduct, Plaintiff was damaged by Defendant in that Plaintiff has been deprived of her benefit of the bargain and loss of purchase price.

104. Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for judgement against Defendant as to each and every count, including:

- A. An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;
- B. An order enjoining Defendant from selling items or goods for higher than listed;
- C. An order enjoining Defendant from suggesting or implying that the goods are accurately priced;

D. An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

E. An order awarding declaratory relief and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F. An order requiring Defendant to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, plus pre- and post-judgment interest thereon;

G. An order requiring Defendant to disgorge any ill-gotten benefits received from Plaintiff and members of the Class as a result of any wrongful or unlawful act or practice;

H. An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I. An order awarding attorneys' fees and costs to Plaintiff and the Class; and

J. An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 17, 2023.

Respectfully Submitted,

s/**Paul Kent Bramlett**
Paul Kent Bramlett #7387
Robert Preston Bramlett #25895
Bramlett Law Offices

P. O. Box 150734
Nashville, TN 37215
Telephone: 615.248.2828
Facsimile: 866.816.4116
Emails: PKNASHLAW@aol.com
Robert@BramlettLawOffices.com


-AND-

Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
**POULIN | WILLEY**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: paul.doolittle@poulinwilley.com
blake.abbott@poulinwilley.com