IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHARLIA COTTON, individually and on behalf of similarly situated persons, | ) ) ) |
| Plaintiff, | ) NO. 3:23-cv-01215 ) |
| v. | ) JUDGE CAMPBELL ) MAGISTRATE JUDGE HOLMES |
| DOLLAR GENERAL CORPORATION, | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Sharlia Cotton is a customer of Defendant Dollar General Corporation ("Dollar General"). (Compl., Doc. No. 22 at ¶ 11). Plaintiff claims that Dollar General labels products with lower prices than those charged at checkout. (*Id*. ¶¶ 4, 12-13). She brings this case as a putative class action asserting claims of unjust enrichment, breach of contract, fraud, and fraudulent misrepresentation. (*Id*. (Counts I-IV)). Dollar General contends Plaintiff agreed to arbitration when she enrolled in a Dollar General account. Now before the Court is Dollar General's Motion to Compel Individual Arbitration and Dismiss or Stay the Litigation, which is fully briefed. (Doc. No. 42, 43, 47, 49). For the reasons stated herein, Dollar General's Motion to Compel Arbitration is **GRANTED**.

### I. BACKGROUND

Plaintiff shops regularly at Dollar General locations in Myrtle Beach, South Carolina. (Doc. No. 1, ¶¶ 10-11). Dollar General allows customers to create a Dollar General Account that may be used to select coupons, promotions, and other discounts. (Gernux Decl., Doc. No. 43-1, ¶¶ 7-8). On April 3, 2022, Plaintiff created a Dollar General account by signing up on Dollar General's app. (*Id*., ¶ 11). To enroll she entered her name, phone number (which was verified through an

SMS verification code sent to that phone number), email address, password of her choosing, and clicked "Create Account." (*Id*., ¶ 13). After entering the information required on the enrollment screens, Plaintiff was prompted to review a "Terms & Conditions" page. (*Id*., ¶ 14). The page stated, "It's really important that you read the T&C before using this app" and included a link to the Terms and Conditions. (*Id*.). The page also contained an acknowledgement for the user: "I acknowledge that I have read and agree to the above Terms and Conditions[.]" (*Id*. ¶ 15). The user must then check a box to acknowledge and agree to the Terms and Conditions. (*Id*.). Once the user acknowledges and agrees to the Terms and Conditions by checking the box, a button appears with the words, "I Accept.". (*Id*. ¶ 17). Plaintiff checked the box acknowledging that she had read and agreed to the Terms and Conditions and then completed enrollment by selecting the "I Accept" button. (*Id*. ¶¶ 15-18).

The Terms and Conditions contained the following arbitration provision:

> **YOU AND DOLLAR GENERAL AGREE THAT IN THE EVENT OF ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF, RELATING TO, OR CONNECTED IN ANY WAY WITH THE WEBSITES AND/OR APP, OR THE BREACH, ENFORCEMENT, INTERPRETATION, OR VALIDITY OF THESE TERMS (INCLUDING THE PRIVACY POLICY) (COLLECTIVELY "CLAIM"), SUCH CLAIM WILL BE RESOLVED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION, EXCEPT AS OTHERWISE SET FORTH IN THESE TERMS, NOTWITHSTANDING THE FOREGOING: (I) IN LIEU OF ARBITRATION, EITHER YOU OR DOLLAR GENERAL CAN BRING AN INDIVIDUAL CLAIM IN SMALL CLAIMS COURT IN THE UNITED STATES OF AMERICA CONSISTENT WITH ANY APPLICABLE JURISDICTIONAL AND MONETARY LIMITS THAT MAY APPLY, PROVIDED THAT IT IS BROUGHT AND MAINTAINED AS AN INDIVIDUAL CLAIMS; AND (II) YOU AGREE THAT YOU OR DOLLAR GENERAL MAY BRING SUIT IN COURT TO ENJOIN INFRINGEMENT OR OTHER MISUSE OF INTELLECTUAL PROPERTY RIGHTS.**

(*Id*., ¶ 23 (emphasis in original)).

The arbitration agreement also contains a class action waiver which states, in part, "**YOU UNDERSTAND AND AGREE THAT THE MAKING OF CLAIMS OR RESOLUTION OF**

DISPUTES PURSUANT TO THIS AGREEMENT SHALL BE IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." (*Id*., ¶ 24 (emphasis in original)).

These terms were updated in October 2022, and June 2023, and Plaintiff agreed to the updated terms. (*Id*., ¶¶ 25, 27). The updated terms contained an arbitration provision that was substantially identical to the Terms and Conditions that Plaintiff originally agreed to on April 3, 2022. (*Id*., ¶ 27).

Defendant seeks to enforce the arbitration agreement and compel arbitration. (Doc. No. 42).

## II. LEGAL STANDARD

The question of whether Plaintiff's claim must be arbitrated is governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq*. The FAA "expresses a strong public policy favoring arbitration of a wide range of disputes" and provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." *Walker v. Ryan's Family Steak Houses, Inc*., 400 F.3d 370, 376 (6th Cir. 2005) (quoting *Cooper v. MRM Invest. Co*., 367 F.3d 493, 498 (6th Cir. 2004), and 9 U.S.C. § 2). "The [FAA] reflects the basic principles that arbitration is a matter of contract and that contracts must be enforced according to their terms." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020). "As a corollary, … parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id*. "Usually courts look to state law to interpret arbitration agreements[,] [b]ut for questions of arbitrability, … there must be clear and unmistakable evidence that the parties agreed to have an arbitrator decide such issues." *Id*.; *see also*, *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186,

1193 (2024) (explaining that "[c]ourts should not assume the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so").

"A delegation provision is 'an [antecedent] agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). "A party seeking arbitration asks the federal court to enforce a delegation provision so that the very issue of arbitrability is compelled to an arbitrator." *Id*. "The practical effect of a delegation provision is that if arbitrability is challenged, then the arbitrator, not the court must address the challenge." *Id*. If a party challenges the validity of an arbitrator's authority to arbitrate arbitrability, the court, not the arbitrator must address those challenges. *Id*. But challenges to a delegation provision must be made specifically. *Id*. at 355-56. "The Supreme Court in *Rent-A-Center* explained that a respondent does not challenge the delegation provision while attacking the enforceability of the arbitration agreement as a whole unless the attack is specific to language in the delegation provision." *Id*. at 355. An unspecific challenge to the enforceability of an arbitration agreement is reserved for the arbitrator. *Id*. at 356. The Supreme Court recently reiterated that "[i]n cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1194 (2024).

Because the agreement to arbitrate, including the agreement to delegate decisions of arbitrability, is a matter of contract, whether a valid agreement exists is determined by state law. 9 U.S.C. § 2; *Cooper*, 367 F.3d at 498; *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 477 (6th Cir. 2005). Before referring a dispute to an arbitrator, the court must determine whether a valid arbitration agreement exists. *See Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1193 (2024). Here, the Arbitration Agreement was executed in South Carolina, so South Carolina law governs. *Glenway*

4

*Indus., Inc. v. Wheelabrator-Frye, Inc.*, 686 F.2d 415, 417 (6th Cir. 1982) (federal courts sitting in diversity apply the choice of law rules of the forum state); *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014) (Tennessee follows the rule of lex loci contractus, which provides that a contract is governed by the law of the jurisdiction in which it was executed absent a contrary intent). South Carolina applies the familiar requisites of contract formation: "a meeting of the minds of the parties as to all essential and material terms, supported by consideration" also referred to as "offer, acceptance, and consideration." *Lampo v. Amedisys Holding, LLC*, 437 S.C. 236, 242 (S.C. 2022).

### III. ANALYSIS

Defendant contends, and Plaintiff does not dispute, that the Terms and Conditions include an arbitration agreement with a delegation provision that "clearly and unmistakably" delegates decision concerning issues of arbitrability, including scope and enforceability, to the arbitrator. (Doc. No. 43 at 4-5; Doc. No. 47). Defendant argues that because the parties "clearly and unmistakably … agreed to arbitrate the issues of arbitrability,"[1] the court need only decide whether the parties created a contract as to the delegation provision. (Doc. No. 43 at 3-5 (citing *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021), and *Blanton*, 962 F.3d at 844)). Defendant argues the parties did, in fact, enter into such an agreement, pointing to Plaintiff's acceptance of the Terms and Conditions when she created a Dollar General Account during which she affirmed that she

---

[1] Defendant points to the following language in the Arbitration Agreement: "**ANY CLAIM, DISPUTE, OR CONTROVERSY … ARISING OUT OF, RELATING TO, OR CONNECTED IN ANY WAY WITH … THE BREACH, ENFORCEMENT, INTERPRETATION, OR VALIDITY OF THESE TERMS … WILL BE RESOLVED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION.**" (Doc. No. 43 at 4 (citing Terms and Conditions, ¶ 23)).

had read and agreed to the Terms and Conditions. (Doc. No. 43 at 6 (citing Gernux Decl., Doc. No. 43-1, ¶¶ 11-18).

Plaintiff disputes that the Terms and Conditions, specifically the arbitration agreement, constitute a contract between the parties because there was no "meeting of the minds." Plaintiff does not dispute that in the enrollment process for her Dollar General Account she affirmed that she had read and agreed to the Terms and Conditions. Nor does she dispute that the Terms and Conditions were available to her through the link. She argues there was no meeting of the minds because "Defendants failed to show when Plaintiff received or reviewed a copy of her arbitration agreement" or "to show where Plaintiff read the agreement in its totality." (Doc. No. 47 at 2-3). Plaintiff argues this case in comparable to *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W. 3d 800 (Tenn. Ct. App. 2015), in which the court held there was no mutual assent to a portion of a contract the plaintiff had not been provided and to which the plaintiff did not have access. *Wofford* is not on point. Unlike *Wofford*, Plaintiff had access to the full electronic contract and made an affirmative expression of having read and agreed to the contract.

More applicable, particularly given that South Carolina law applies, is *Lampo v. Amedisys Holding, LLC*, 877 S.E. 2d 486 (S.C. 2022). In *Lampo*, the South Carolina Supreme Court held the plaintiff had agreed to arbitration because she acknowledged receipt of an arbitration agreement by clicking a pop-up acknowledgment form in her online account and, therefore, had actual notice of the arbitration agreement, and accepted the agreement through the manner specified in the agreement. *Id*. at 243. The *Lampo* court rejected the plaintiff's argument that there was no meeting of the minds because there was no evidence that she had scrolled through or read the agreement. *Id*. at 489. Moreover, in *Lampo*, the acknowledgement form did not require the plaintiff to confirm that she read the arbitration agreement but only to promise that she *would* read it. *Id*. at 491. Here,

Plaintiff affirmed that she *read and agreed* to the Terms and Conditions. This is sufficient evidence to establish the existence of an agreement between the parties.

Plaintiffs next argue that the arbitration agreement is unenforceable because it is a contract of adhesion and substantively unconscionable due to the class action waiver. (Doc. No. 5-11). Neither of these arguments has merit. First, Plaintiff argues only that the arbitration agreement is a contract of adhesion under Tennessee law but South Carolina law applies to the contact at issue. Under South Carolina law, the fact that a contract is a standardized form contract does not render the contract invalid. *Dixon v. Patee*, 898 S.E. 2d 158, 173 (S.C. 2023) ("[A]dhesive contracts are not unconscionable in and of themselves so long as the terms are even-handed."). The party seeking to invalidate the agreement must also establish that the terms of the agreement are so one-sided and oppressive that no reasonable person would accept them. *Id*. Plaintiff has cited no case in Tennessee or South Carolina suggesting that the arbitration agreement in this case is unconscionable. In fact, she would be hard pressed to do so considering that the only downside if Plaintiff declined to agree to the Terms and Conditions is that she would not be able to take advantage of certain discounts at Dollar General.

Having established that the parties agreed to the Terms and Conditions, one of which was to delegate decisions of arbitrability to an arbitrator, the Court's analysis ends and there is nothing left for the court to do but compel arbitration. *Swiger*, 989 F.3d at 505 ("Only a specific challenge to the delegation clause brings arbitrability issues back within the court's province."); *Becker*, 39 F.4th at 355 (stating that "a valid delegation provision removed judicial purview and transfers the question of arbitrability to an arbitrator").

## IV. CONCLUSION

For these reasons, Defendant's Motion to Compel Arbitration (Doc. No. 42) is **GRANTED**. This case will be **STAYED** and **ADMINISTRATIVELY CLOSED** pending the outcome of arbitration.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE